IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY HAZEL,                          :
              Plaintiff                 :
        v.                              : Case No. 3:02-cv-219-KRG-KAP
JOHN McCULLOUGH, SUPERINTENDENT, :
S.C.I. HOUTZDALE, et al.,                :
              Defendants                :

**Report and Recommendation**

Recommendation

Keith Griffin attacked Jeffrey Hazel in the early evening of August 12, 2000, while both were inmates at S.C.I. Houtzdale. Plaintiff Hazel's amended complaint alleges that the defendants, officials and employees of the Pennsylvania Department of Corrections, are liable for violating Hazel's constitutional right under the Eighth Amendment to be free from cruel and unusual punishment. Defendants have filed a motion for summary judgment, docket no. 35, asserting that they did not violate Hazel's constitutional rights. I recommend that the defendants' motion be granted.

Report

I.

Federal Rule of Civil Procedure 56(c) allows a party to obtain summary judgment upon a showing that there is no "genuine issue as to any material fact," and that it is entitled to judgment as a matter of law. A defendant may present a prima facie case for summary judgment on an issue where the plaintiff bears the burden of proof by "pointing out to the District Court [] that there is an absence of evidence to support the non-moving party's case."

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The plaintiff is then required to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Because "the requirement is that there be no genuine issue of material fact," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original), summary judgment must be denied if the evidence is such that a reasonable jury, properly instructed on the applicable substantive law, could find in favor of the non-moving party.  Id., 477 U.S. at 257.  In determining whether there is an issue of material fact, all inferences must be drawn in favor of the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. at 322-23.  Where liability turns on the personal involvement of a defendant, the liability of each defendant must be analyzed separately.  See e.g. Rouse v. Plantier, 182 F.3d 192, 200 (3d Cir.1999)(district court must engage in individualized determination of question of defendant's qualified immunity). Here, plaintiff sues the warden and members of the Program Review Committee, but does not allege that they were even on site when the attack took place; their liability is alleged because they were indifferent to the risk posed by classifying a violent murderer like Griffin as eligible to mix in the yard with his fellow inmates.

2

To prove a prison official liable for an assault by one inmate against another, an inmate plaintiff must show that there was a substantial risk of serious harm to him from another inmate, that the defendant whose actions are under consideration showed deliberate indifference thereto and, of course, that the defendant's deliberate indifference caused harm to the plaintiff. Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997)(reversing grant of summary judgment for defendants); see also Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir.1999)(same).

The Supreme Court has defined deliberate indifference for purposes of Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Since a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the Farmer standard does not require a defendant to admit his consciousness of the risk of serious harm before liability can be imposed. Nevertheless, it must be emphasized that even gross errors of judgment are not constitutional violations[1], and

---

1. See Farmer 511 U.S. at 844: [I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so.
(continued...)

liability requires subjective, not objective culpability. 511 U.S. at 843 n.8. This is a change from the circuit's pre-Farmer standard in failure to protect claims, see Young v. Quinlan, 960 F.2d 351, 360-61 (3d Cir.1992) ("[A] prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate." (my emphasis)).

The leading post-Farmer failure to protect case in this circuit is Hamilton v. Leavy. Hamilton was an inmate in the Delaware state prison system with a long history of being assaulted by fellow prisoners because he was perceived as an informant: he was attacked while in the general population, two months after the prison's multidisciplinary team (MDT) recommended he be placed in protective custody.

The district court had granted summary judgment to defendant Lewis, the head of the classification committee (CICC), which was a level above the MDT: Lewis had denied Hamilton's request for protective custody because he believed that "there was no evidence of a problem" in the prison. The Court of Appeals

---

(...continued)
Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. (my emphasis).

reversed in a two step process: first, the appellate panel found
that there was a genuine issue of fact on the issue of substantial
risk of serious harm because the MDT had made a not "unwarranted
or one-sided" recommendation for protective custody.  117 F.3d at
747.  The panel then proceeded to consider the question of
deliberate indifference and concluded, because Lewis could be
charged with the knowledge of Hamilton's long history of being at
risk for assaults as a result of being branded a snitch and
nevertheless decided not to place him in protective custody, that
Lewis could be found to have made a "decision to consciously
disregard that risk."  117 F.3d at 748.  This reasoning is more
influenced by Young v. Quinlan than Farmer, but is nevertheless
binding precedent.

     The members of the MDT had been granted summary judgment
by the district court because they had in fact made the
recommendation of protective custody (which in hindsight was the
proper decision) and could not, once that course of action was
rejected by the CICC, sua sponte place Hamilton in protective
custody.  The circuit nevertheless reversed the grant of summary
judgment on the grounds that the MDT could have taken some
"additional steps," after its recommendation was rejected.  117
F.3d at 749.  The Hamilton panel found that the MDT could have
placed Hamilton in administrative segregation, and that the MDT's
failure to do so "could be viewed by a factfinder as the sort of

5

deliberate indifference to inmate safety" that would allow the imposition of liability on the MDT members.   <u>Id.</u>

Another precedential post-<u>Farmer</u> failure to protect decision is <u>Urrutia v. Harrisburg Police Department</u>, 91 F.3d 451 (3d Cir.1996).   In <u>Urrutia</u>, the Court of Appeals for the Third Circuit reversed this court's grant of a motion to dismiss, on my Report and Recommendation, on the question whether plaintiff had pleaded a claim of deliberate indifference.   The <u>Urrutia</u> panel found a claim of deliberate indifference to be stated by allegations (made in the appellate brief) that while plaintiff Urrutia was under arrest for an unspecified offense and handcuffed behind his back, Urrutia's girlfriend stood near him holding a knife, then stabbed him once in the hand, and then twice more after Urrutia called out to the police officers who had taken him into custody but had not placed him in a police vehicle.   <u>Urrutia</u> did not distinguish between the claim of deliberate indifference based on the failure to prevent the first stabbing and the claim of deliberate indifference based on failure to prevent the subsequent two stabbings.   <u>Urrutia</u> interpreted <u>Farmer</u> loosely to mean that a defendant who knowingly exposes a plaintiff to the risk of serious harm can be found, by the mere fact of that exposure (not by knowledge of the risk of serious harm), to have consciously disregarded the risk of that serious harm.   91 F.3d at 456. <u>Urrutia</u> does correctly imply for this case that a finding of

6

deliberate indifference does not require as a <u>sine</u> <u>qua</u> <u>non</u> either evidence of prior episodes of assaultive behavior by the attacker or of prior assaults on the inmate plaintiff.

Not precedential, but more relevant in applying <u>Hamilton</u> to this case, is <u>Heggenmiller v. Edna Mahan Correctional Institution for Women</u>, 128 Fed. Appx. 240 (3d Cir.2005).   In <u>Heggenmiller</u>, plaintiff inmates sued supervisory personnel for being deliberately indifferent to the prospect that they would be sexually assaulted by corrections officers.  The circuit held that the awareness by prison officials that corrections officers had committed three serious (and numerous less serious) sexual assaults on other inmates was insufficient to charge them with knowledge that there was a "substantial risk of harm" that the sexual assault by corrections officers against plaintiff might take place.  128 Fed. Appx. at 245.  <u>Heggenmiller</u> can be harmonized with <u>Hamilton</u> by a rule that general knowledge of prior incidents of misconduct does not place supervisory personnel on notice that a particular incident might happen with sufficient probability to charge the supervisory personnel with the scienter needed for deliberate indifference, while particularized knowledge of risk to a particular inmate or from a particular inmate can provide the awareness of risk necessary to hold a prison official liable.

<u>Heggenmiller</u> draws most heavily on the Circuit's precedential decision in <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120 (3d

Cir.2001).  In <u>Beers-Capitol</u>, the plaintiffs were juvenile female inmate sexually exploited by a male corrections officer.  Beers-Capitol had prevailed at trial against Whetzel, the employee who had sexually abused her; on appeal the Court of Appeals affirmed the grant of summary judgment to almost all of the supervisory officials whom plaintiff alleged were deliberately indifferent to the risk of assault.  (The panel reversed the grant of summary judgment to one defendant, Burley, who admitted she "kind of knew" of the offender's pattern of improper sexual contact with inmates.) <u>Beers-Capitol</u> observed that evidence that a particular class of incidents happens with great frequency (whether or not a particular source of the risk can be pinpointed) can be circumstantial evidence that prison officials must have known of the risk.  256 F.3d at 133, <u>citing</u> <u>Farmer</u>, 511 U.S. at 842-43.  When the risk of harm is great enough, failure to respond to that risk can be circumstantial evidence of deliberate indifference. <u>Beers-Capitol</u>, 256 F.3d at 133-34, <u>citing</u> <u>Sample v. Diecks</u>, 885 F.2d 1099 (3d Cir.1989)(risk that inmate would be detained after sentence expired); <u>see</u> <u>also</u> <u>Schueneman v. United States</u>, 2006 WL 408404 (3d Cir. February 23, 2006)(affirming grant of summary judgment to prison officials in prison suicide).

II

Griffin attacked Hazel on the track in the South Yard at S.C.I. Houtzdale at about 7:00 p.m. on August 12, 2000.  According

to the post-incident investigative report by the Pennsylvania State
Police, Griffin had been removed from his job in the prison
warehouse about seven weeks earlier, and blamed Hazel. There also
reportedly had been a confrontation approximately one week earlier
in which Hazel approached Griffin and told Griffin to stop being
a snitch. On August 12, 2000, inmates who spoke with the
investigator told him that Griffin punched Hazel in the head,
knocking him down, then kicked or bounced Hazel's head on the
pavement and pummeled Hazel with his fists. It is not clear how
long the attack lasted or what stopped it. Griffin beat Hazel
around the face and head to the point that Hazel had to be life-
flighted from the prison to a hospital; Hazel suffered permanent
injuries. Defendants do not dispute that Hazel was injured, but
assert that there is no evidence that they knew of or were
indifferent to the risk that Griffin might assault Hazel.

In support of the element of deliberate indifference,
Hazel offers three points: (1) Griffin was known to be a violent
inmate capable of attacking any inmate at any time; (2) Griffin had
received a disciplinary sanction for threatening another inmate on
February 1, 1999; (3) the Pennsylvania Department of Corrections
had a classification system that none of the defendants "followed
or gave meaning to." docket no. 44 at 6.

It is not in dispute that Griffin was serving a life
sentence for the brutal murder of his girlfriend's mother: Griffin

9

put the barrel of a pistol in the victim's mouth and pulled the trigger. Griffin then committed aggravated assault on the girlfriend by pistol whipping her in the face, seriously injuring her. When police responded to the scene of the crime, Griffin attempted to use the infant son of his girlfriend as a hostage and human shield. The factual history of Griffin's crime was provided to the Pennsylvania Department of Corrections and was in his file at S.C.I. Houtzdale.

Griffin was classified as a "3OZY" at S.C.I. Houtzdale. The Pennsylvania Department of Corrections has an internal classification system which gives each inmate a numerical ranking from 1, the lowest risk, to 5, signifying placement in administrative custody. Griffin, as a "3," was permitted to be in the general population. The "O" code meant that Griffin should be kept under closer observation by his block officer; this designation could be assigned to an inmate for a number of reasons having nothing to do with perceived risk of violence, including an inmate's health conditions or mental health issues. Inmates could also receive "R" or "M" codes denoting minimum security and eligibility to travel outside the prison, respectively. The "Z" code signified single cell status, and could be assigned because of a perceived risk to cellmates, but could also be assigned because an inmate was HIV positive or at risk of being assaulted; "Y" denoted a life sentence.

S.C.I. Houtzdale is a medium security prison built in the 1990s along with similarly designed institutions at Somerset, Albion, Coal Township, Greene, and Mahanoy.  On the day Hazel was attacked, the prison housed approximately 1800 inmates, including 74 inmates serving life sentences; from 500 to 900 inmates could have been in the South Yard, one of two yards at Houtzdale.  The prison has a perimeter fence but does not include classic "guard towers." Typically, one sergeant and five corrections officers supervise prisoners in the yard, which is several acres large, from ground level.  On the day Hazel was attacked, the corrections officers were not aware of the assault until it was over.

Other than inmates in administrative custody with a "5" code, the classification system does not dictate which inmates were permitted in the yard.  As plaintiff points out, the codes were not marked by any distinction in inmate clothing that would call for special scrutiny by the corrections officers and with an inmate to corrections officer ratio of approximately 100/1 in the yard, even recognizing inmates by their codes would not be possible. According to defendant John McCullough, formerly the warden at Houtzdale and subsequently deputy secretary for the Western region, no attempt has ever be made, or even considered, to separate inmates by classification code or by offense level, with the exception that inmates with the "1" or "2" classification were apparently eligible for lower security prisons like S.C.I. Mercer.

The meaning of the codes is not even explained to all corrections officers.

III

A.

Before discussing the motion for summary judgment on the merits, I recommend denial of defendants' motion for summary judgment on the basis of lack of jurisdiction. Although the complaint named defendants in their official capacities, plaintiff moves to amend the complaint to specify that defendants are sued in their individual capacities. Because that motion is proper it is granted: the jurisdictional defense is moot. I also recommend denial of defendants' motion for summary judgment on the basis of the statute of limitations. Plaintiff explains the typographical error that led the defendant to believe that there was a timeliness issue, and defendants do not dispute plaintiff's averments as to the date of the accrual of the claim and the date of the filing of the complaint. Finally, defendants' motion for summary judgment on the basis of qualified immunity should be rejected. The Eighth Amendment right to be protected against intra-prison assault is well established; defendants' argument that they acted properly is a defense on the merits, not a qualified immunity defense. See Beers-Capitol v. Whetzel, 256 F.3d at 142 n.15.

B.

Plaintiff does not attempt to show that any defendant had actual knowledge of what appeared after the fact to be a history which might have signaled animosity between Griffin and Hazel, that Hazel complained of any fear of attack by Griffin or anyone else, that since his incarceration Griffin had a history of assaults on other prisoners, or that Griffin had mental health defects that might signal a risk of assault.   Compare Herriott v. S.C.I. Somerset, Case No. 3:96-cv-298-DBS-KAP (granting in part and denying in part summary judgment to prison officials in complaint filed after murder of plaintiff's decedent by mentally ill cellmate).   As such, Hamilton v. Leavy and Herriott v. S.C.I. Somerset have little factual similarity to this case.   Plaintiff is more in the position of the plaintiff in Beers-Capitol, seeking to prove supervisors liable on the basis that Griffin was such a great and obvious risk generally that defendants' failure to respond (as demonstrated by the inadequacies of a classification system that permitted Griffin to mix in the yard with Hazel) itself shows deliberate indifference to the harm that eventually befell Hazel.   That requires more evidence than the record contains. Beers-Capitol found it an insufficiently obvious risk that male corrections officials operating a juvenile detention center for girls would exploit their positions to sexually exploit the inmates to hold that a policy that male staff could have extended solo

13

contact with female inmates, in isolated areas, at night, and off prison premises demonstrated deliberate indifference by defendant Liggett, the supervisor responsible for the policy.  256 F.3d at 135-36.  The Beers-Capitol panel, although citing evidence that the risk of sexual misconduct by inmates was sufficiently well known to be the subject of staff training sessions, did not regard the hypothetical risk of sexual misconduct by corrections officers as a legally relevant datum.  Rather, said Judge Becker for the panel, the relevant point in discussing the sufficiency of the evidence of Liggett's liability as a supervisor was what he knew at the time about an actual pattern of sexual abuse by corrections officers. Since the supervisor could be shown to be aware of only two allegations of sexual misconduct, there was insufficient evidence to say that the policy showed deliberate indifference.  256 F.3d at 137-38.  Liggett's failure to implement several (seemingly obvious) precautions recommended by the American Corrections Association that would have reduced the risk that a corrections officer would exploit time alone with an inmate was evidence perhaps of negligence, but not of deliberate indifference.

Beers-Capitol makes it clear, then, that the question of deliberate indifference to inmate assault by a supervisor without the direct contact with the inmate requires a focus on the concrete experience of the supervisor, not on the generally recognized but unquantified risk that inmates will assault other inmates.

Plaintiff offers no evidence, expert, anecdotal, or statistical, that Griffin by reason of his life sentence for first degree murder or the particularly depraved circumstances surrounding his offense was known to be a greater risk of violence within prison than any other inmate. Plaintiff expressly relies on the presumption that a man who would commit a brutal murder and aggravated assault with a pistol is by that fact an excessive risk of violence to his fellow inmates. docket no. 44 at 6. <u>Beers-Capitol</u> permits no such presumption. And in fact, to the extent that the relationship between offense and danger in prison was explored in the record, depositions of some of the defendants would indicate that aggressive homosexuals (regardless of offense), not murderers, cause prison officials the greatest concern.

Nor does plaintiff show that Griffin's single previous disciplinary sanction for threatening another inmate on February 10, 1999 (eighteen months before the attack on Hazel) was so egregious that it should have called for special scrutiny of Griffin, much less that it denoted a risk to Hazel. <u>Compare Counterman v. Warren County Correctional Facility</u>, 176 Fed. Appx. 234, 240-42 (3d Cir.2006)(affirming summary judgment to supervisory personnel in assault by trustee on inmate plaintiff, where plaintiff claimed that policy permitting inmates charged or convicted of violent crimes to become trustees showed deliberate indifference to his safety).

15

In short, the severe injury to Hazel is a tragic loss, but under the precedents discussed above the legal responsibility for the assault stops with Griffin; it does not rest with the prison officials who are alleged to have been indifferent to the risk that it would take place.  Summary judgment should be granted to the defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: ___June 19, 2007___          _____
                                   Keith A. Pesto,
                                   United States Magistrate Judge

Notice by ECF to counsel of record